JAMES C. NIELSEN (111889)
*jnielsen@nielsenhaley.com*
THOMAS H. NIENOW (136454)
*tnienow@nielsenhaley.com*
NIELSEN, HALEY & ABBOTT LLP
100 Smith Ranch Road, Suite 350
San Rafael, California 94903
Telephone: (415) 693-0900
Facsimile: (415) 693-9674

Attorneys for Plaintiff and Counterdefendant
PENN-STAR INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PENN-STAR INSURANCE COMPANY, *a Pennsylvania corporation,*<br><br>Plaintiff,<br><br>v.<br><br>THE CADEN COMPANIES, INC., dba BELLY BANDIT, *a California Corporation*, LORI CADEN, *an individual*, JODI CADEN, *an individual*, and CARMEN PULIDO, *an individual*.<br><br>Defendants.<br><br>AND CROSS ACTION | No. 2:17-cv-02369-AB-PLAx<br><br>PENN-STAR'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM.<br><br>*Accompanying documents*:<br><br>• Request for judicial notice;<br>• Declaration of Cheryl A. Mawby;<br>• [Proposed] Statement of uncontroverted facts and conclusions of law;<br>• [Proposed] Order;<br>• [Proposed] Judgment.<br><br>Date: December 15, 2017<br>Time: 10:00 a.m.<br>Courtroom 7B, First Street Courthouse<br>HONORABLE ANDRÉ BIROTTE, JR. |

PLEASE TAKE NOTICE that on December 15, 2017, at 10:00 a.m., in Courtroom Number 7B of the above-entitled Court located in the United States Courthouse, 350 West First Street, Los Angeles, California, plaintiff and counterdefendant Penn-Star Insurance Company will, and hereby does, move the Court for an order granting summary judgment in favor Penn-Star and against defendants and counterclaimants The Caden Companies, Inc., dba Belly Bandit, Lori Caden, and Jodi Caden, to which we refer collectively as “Caden,” and against defendant Carmen Pulido pursuant to Federal Rules of Civil Procedure, Rule 56. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 1, 2017.

The motion for summary judgment is made on the bases that, as a matter of law, Penn-Star has no duty to defend or indemnify Caden or Pulido in connection with underlying litigation styled *JKL IP Company, LLC, The Caden Company, etc. v. Creative Forces Group, Inc.*, C.D. Cal., No. 2:16-cv-09065-CBM-SS, or to provide “independent” (*Cumis*) counsel to Caden in connection with the *JKL* action, and thus Penn-Star cannot be found to have breached the implied covenant of good faith and fair dealing because no insurance-policy benefits are owed to Caden or Pulido.

The motion will be based upon this notice and accompanying memorandum, the request for judicial notice, the declaration of Cheryl A. Mawby, the proposed statement of uncontroverted facts and conclusions of law, the proposed order, the proposed judgment, the Court’s files and records herein, and upon such further oral and documentary evidence as may be presented at the hearing.

NIELSEN, HALEY & ABBOTT LLP

/s/ Thomas H. Nienow

November 7, 2017 By: ______________________________

Thomas H. Nienow
Attorneys for Plaintiff and Counterdefendant
PENN-STAR INSURANCE COMPANY

# TABLE OF CONTENTS


INTRODUCTION. 1

UNCONTROVERED FACTS. 1

1. The underlying action. 1
   - A. Caden's first amended complaint. 1
   - B. Pixior's counterclaim. 3
2. The Penn-Star policies. 4
3. The insurance-coverage action. 6

DISCUSSION. 7

1. Penn-Star has no duty to defend Caden. 7
   - A. The duty to defend. 7
   - B. Pixior's counterclaim implicates only the "offense" of slander in Coverage B. 8
   - C. The breach-of-contract exclusion precludes any duty to defend. 10
2. Because Penn-Star has no duty to defend it can have no duty to indemnify. 15
3. Penn-Star has no duty to pay for Caden's personal counsel. 15
4. Caden cannot prevail on its "bad faith" claim. 16

CONCLUSION. 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Simmental Assn. v. Coregis Ins. Co.*,
282 F. 3d 582 (8th Cir. 2002) 8

*Anthem Elec., Inc. v. Pacific Empl. Ins. Co.*,
302 F. 3d 1049 (9th Cir. 2002) 15

*Atrium 5 Ltd. v. Hossain*,
2017 U.S. Dist. Lexis 90577 (M.D. Fla. 2017),
*adopted and confirmed*, 2017 U.S. Dist. Lexis 90246 (M.D. Fla. 2017) 7

*Axis Ins. Co. v. Inter/Media Time Buying Corp.*,
2015 U.S. Dist. Lexis 77026 (C.D. Cal. 2015) 11, 15

*Cahill v. Liberty Mut. Ins. Co.*,
80 F. 3d 336 (9th Cir. 1996) 9

*KM Strategic Mgmnt., LLC et al. v. American Cas. Co., etc.*,
156 F. Supp. 3d 1154 (C.D. Cal. 2015) 12, 13, 15

*MedeAnalytics, Inc. v. Federal Ins. Co., Inc.*
2016 U.S. Dist. Lexis 21377 (N.D. Cal. 2016) 13, 15

*Northrop Grumman Corp. v. Factory Mut. Ins. Co.*,
538 F. 3d 1090 (9th Cir. 2008) 13

*Pan Pac Retail Prop., Inc. v. Gulf Ins. Co.*,
471 F. 3d 961 (9th Cir. 2006) 8

*Tower Ins. Co. of N.Y. v. Capurro Enter, Inc.*,
2012 U.S. Dist. Lexis 46443 (N.D. Cal. 2012) 10

*Trenches, Inc. v. Hanover Ins. Co.*,
2012 U.S. Dist. Lexis 190868 (C.D. Cal. 2012),
*aff'd* 575 Fed. Appx. 741 (9th Cir. 2014) 10, 11, 15

*Trishan Air, Inc. v. Federal Ins. Co.*,
635 F. 3d 422 (9th Cir. 2011) 17

STATE CASES


*Acceptance Ins. Co. v. Syufy Enterprises, Inc.*, 69 Cal. App. 4th 321 (1998) 10

*Aloha Pacific, Inc. v. California Ins. Guar. Assn.*, 79 Cal. App. 4th 297 (2000) 14

*Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183 (1998) 8

*California Cas. Co. v. Northland Ins. Co.*, 48 Cal. App. 4th 1682 (1996) 14

*Harbor Ins. Co. v. Central Nat'l Ins. Co.*, 165 Cal. App. 3d 1029 (1985) 9

*Kim Seng Co. v. Great American Ins. Co.*, 179 Cal. App. 4th 1030 (2009) 13

*Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819 (2006) 11, 12, 15

*Mirpad, LLC v. Cal. Ins. Guarantee Assn.*, 132 Cal. App. 4th 1058 (2009) 13

*Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109 (1999) 13

*Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903 (1986) 14

*Ringler Assoc., Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165 (2000) 9

*S.B.B.C., Inc. v. St. Paul Fire & Marine Ins. Co.*, 186 Cal. App. 4th 383 (2010) 7, 13

*San Diego Fed. Cred. Union v. Cumis Ins. Society, Inc.*, 164 Cal. App. 3d 358 (1984) 15

*Southgate Rec. & Park Dist. v. California Assoc. for Park and Rec. Ins.*, 106 Cal. App. 4th 293 (2003) 12, 15

*Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1 (1995) 7, 8

*We Do Graphics, Inc. v. Mercury Cas. Co.*, 124 Cal. App. 4th 131 (2004) 9

*Zurich Ins. Co. v. Peterson*, 188 Cal. App. 3d 438 (1986) 9

STATUTES

Cal. Bus. & Prof. Code § 17200 2

Cal. Civ. Code § 2860 15, 16

Cal. Civ. Code § 3426.3 4

Cal. Govt. Code § 6500 et seq. 12

Cal. Ins. Code § 533 16

## INTRODUCTION

The Caden Companies, Inc., contracted with Pixior for the latter to warehouse Caden's products and to fulfill customer orders. Disputes arose between Caden and Pixior regarding the fees, payment terms, and timing, conditions, and charges for storing and counting inventory under the warehousing contract. As a result of these disputes Caden allegedly disparaged Pixior by claiming it had "stolen" Caden's money, overcharged customers, and lost warehoused goods. Caden and Pixior eventually sued each other for breaching contract terms relating to payment, storage, confidentiality, and non-solicitation. Pixior added a claim for slander based on Caden's disparaging statements.

Penn-Star Insurance Company agreed to defend Caden against Pixior's counterclaim because slander is a covered "offense" under Caden's liability policy. But Penn-Star reserved its right to disclaim duties to defend or indemnify Caden because the policy excludes coverage for slander "arising out of a breach of contract …." Penn-Star now moves for summary judgment. As explained within, the breach-of-contract exclusion bars any duty to defend or indemnify Caden against the underlying litigation. The Court thus can and should enter judgment for Penn-Star and against Caden in this action.

## UNCONTROVERTED FACTS

### 1. The underlying action.

#### A. Caden's first amended complaint.

Caden has sued Pixior in underlying litigation styled, *JKL IP Company, LLC, The Caden Company, etc. v. Creative Forces Group, Inc.*, C.D. Cal., No. 2:16-cv-09065-CBM-SS. (Uncontroverted fact no. 1.) As alleged there, Caden, using the name "Belly Bandit," is "in the business of designing, marketing, selling, and distributing women's clothing, namely maternity wear and shapewear designed for use before, during, and after pregnancy." (Uncontroverted fact no. 2.)

Caden alleges that it contracted with Pixior to "warehouse, pick, package, and ship" Caden's "products and goods to various big box stores, retailers of maternity items and online retailers." (Uncontroverted fact no. 3.) A "necessary and material part of the" contracts "included confidentiality provisions" governing the parties' respective confidential, proprietary information. (*Id*.)

In December 2015, Pixior "suddenly" presented a new agreement to Caden requiring it to pay "significantly higher fees, changed payment terms, timing, and conditions and charged [Caden] for storage and inventory counts that it had never been charged for previously." (Uncontroverted fact no. 4.) "Pixior's unilateral attempt at changing the parties' agreement constituted a breach of the existing contract …." (Uncontroverted fact no. 5.)

Caden notified Pixior of its intent to terminate, and Pixior allegedly then placed a fraudulent warehouseman's lien on Caden's goods in storage and used its boxes and shipping materials to ship competitors' products. (Uncontroverted fact no. 6.) Caden alleges that it paid both the fees and the "falsified additional charges" because its "business was at a standstill as long as the products were being held hostage …." (Uncontroverted fact no. 7.) The first amended complaint also alleges that Pixior allowed a company called "Tummy Aid"—a Caden competitor—access to Caden's confidential trade secrets to put Caden out of business. (Uncontroverted fact no. 8.)

Based on these allegations, Caden states claims against Pixior and its principal Yassine Amallal for breach of contract, indirect patent infringement, misappropriation of trade secrets, fraud, intentional misrepresentation, fraudulent warehouseman's lien, interference with business relations, and violation of Cal. Bus. & Prof. Code § 17200. (Uncontroverted fact no. 9)

### B. Pixior's counterclaim.

Pixior counterclaimed against Caden [1] and its putative employee Carmen Pulido. (Uncontroverted fact no. 10.) Pixior refers to the 2012 "Warehousing and Distribution Agreement" with Caden as the "Pixior Agreement," which stated that Pixior owned its confidential trade secrets and that Caden would not solicit any of Pixior's employees during and two years after termination of the Pixior Agreement. (Uncontroverted fact no. 11.) Regarding its trade secrets, Pixior alleges that its "knowhow in the warehousing and fulfillment business was, and is, unique in conception" and that, as a result, Pixior's service is "widely known and accepted among businesses in the apparel industry and demand has developed therefore in the marketplace." (Uncontroverted fact no. 12.) The information relating to Pixior's "knowhow and customers was confidential" and constituted "trade secrets not accessible to others for their commercial benefit." (*Id*.)

Caden allegedly breached the Pixior Agreement by "stealing and using [Pixior's] trade secrets" and by "soliciting the employment of Counter-Defendant Pulido and two other Pixior workers." (Uncontroverted fact no. 13.) The counterclaim also alleges that "[c]ommencing on or about January 2016 and continuing thereafter," Caden "willfully, without justification and without privilege falsely published, communicated and caused to be published to the public and local police department that" Pixior and Amallal "have stolen their monies, overcharge customers, and lose goods warehoused" by Pixior. (Uncontroverted fact no. 14.) These alleged statements "created the false appearance" that Pixior "is criminal and incompetent in its business." (*Id*.)

Based on these allegations Pixior states counterclaims against Caden for breach of contract, a judicial declaration that only the Pixior Agreement is valid and enforceable, and slander. Pixior also states counterclaims for violation of Cal.

[1] The allegations against Caden are also made against its principals, Jodi and Lori Caden, who are counterdefendants both in the underlying case and here.

Bus. & Prof. Code § 17200 et seq., and violation of the Uniform Trade Secrets Act, Cal. Civ. Code § 3426.3, against Caden and Pulido. (Uncontroverted fact no. 15.)

**2. The Penn-Star policies.**

Penn-Star issued to Caden as named insured Commercial Lines insurance policy number CPV0006525 effective July 15, 2015, to July 15, 2016. Penn-Star renewed the policy under number CPV0011182 for the policy period July 15, 2016, to July 15, 2017. (Uncontroverted fact no. 16.) Where the named insured is a corporation as here, the term "insured" includes the named insureds' executive officers, directors, and shareholders, in their capacity as such, as well as the named insured's employees. (Uncontroverted fact no. 17.)

The Penn-Star policies set forth the following relevant insuring language:

> **SECTION I—COVERAGES**
>
> * * *
>
> **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured any against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. * * *

(Uncontroverted fact no. 18.) The term "personal and advertising injury" means in relevant part the offenses of "[t]he use of another's advertising idea in your

'advertisement'" or "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services …." (Uncontroverted fact no. 19.) The policies define "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your good, products or services for the purpose of attracting customers or supporters" and includes "material placed on the internet or on similar electronic means of communication …." (Uncontroverted fact no. 20.)

The policies also set forth the following relevant exclusions:

> **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> * * *
>
> **2. Exclusions**
>
> This insurance does not apply to:
>
> * * *
>
> **c. Material Published Prior To Policy Period**
>
> "Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.
>
> * * *
>
> **f. Breach Of Contract**
>
> "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".
>
> * * *

(Uncontroverted fact no. 21.) Endorsements to the policies also set forth the following relevant exclusion:

> B. The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability**:
>
> **2. Exclusions**
>
> This insurance does not apply to:
>
> **Access Or Disclosure Of Confidential Or Personal Information**
>
> "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.
>
> This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

(Uncontroverted fact no. 22.)

### 3. This insurance-coverage action.

Penn-Star agreed to defend Caden in connection with the underlying counterclaim under a reservation of rights. (Uncontroverted fact no. 23.) Penn-Star then filed this action seeking judicial declarations that it has no duty to defend or indemnify Caden or Pulido[2] against the underlying action. (Uncontroverted fact

[2] Penn-Star named Pulido as a defendant here so she would be bound by any the Court's coverage decision because she would qualify as an additional insured to the

no. 24.) The Clerk has entered the default of Pulido based on her failure to file a responsive pleading. (Uncontroverted fact no. 25.)

Caden has filed a counterclaim against Penn-Star alleging claims for breach of the duty to provide "independent" (*Cumis*) counsel, a judicial declaration that Penn-Star is required to indemnify Caden in the underlying action, and breach of the implied covenant of good faith and fair dealing. (Uncontroverted fact no. 26.)

## DISCUSSION

### 1. Penn-Star has no duty to defend Caden.

#### A. The duty to defend.

"Whether an insurer has a duty to defend 'depends in the first instance, on a comparison between the allegations of the complaint and the terms of the policy.'" *S.B.B.C., Inc. v. St. Paul Fire & Marine Ins. Co.*, 186 Cal. App. 4th 383, 388 (2010) (cit. omitted). "'If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage. On the other hand, if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance.'" *Id*.

Thus, the "duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Waller v. Truck Ins.*

---

extent she was an employee of Caden. Pulido did not answer and her default has been entered. (Doc. 19.) The Court can thus include Pulido in any final adjudication entered on the coverage issues raised by Penn-Star's complaint. *Atrium 5 Ltd. v. Hossain*, 2017 U.S. Dist. Lexis 90577, *7 (M.D. Fla. 2017) (cit. omitted) (the "preferred practice … 'where an insurer seeks a declaration that it has no duty to defend or indemnify the defaulting defendant and the other defendants who contest the insurer's allegations'" is to await entry of judgment until the coverage issues "have been adjudicated with regard to all defendants"), *adopted and confirmed*, 2017 U.S. Dist. Lexis 90246 (M.D. Fla. 2017).

*Exchange, Inc*., 11 Cal. 4th 1, 19 (1995). Caution is required, moreover, when one speaks of a "potential" for coverage. This is because the "duty to defend depends on *facts* in the complaint." *Waller,* 11 Cal. 4th at 25 [italics added]. Uncertainty as to the *legal* interpretation of a policy term will not create a potential for coverage. Thus, "where [the] only potential for liability turns on resolution of [a] legal question, there is no duty to defend." *Id.* at 25-26.

**B. Pixior's counterclaim implicates only the "offense" of slander in Coverage B.**

Before analyzing the relevant exclusions we address the policies' Coverage B insuring language applicable to "sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' …." (Uncontroverted fact no. 18.) "In an insurance coverage action, the insured has the burden to prove that the claim falls within the basic scope of coverage." *Pan Pac. Retail Prop., Inc. v. Gulf Ins. Co.,* 471 F. 3d 961, 970 (9th Cir. 2006.) (cit. omitted); see *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998). The policies' Coverage A is not implicated because the underlying counterclaim does not allege accidental "bodily injury" or "property damage" as defined. We thus need address only Coverage B offenses here.

One Coverage B offense is the "use of another's advertising idea in your 'advertisement.'" (Uncontroverted fact no. 19.) "The plain and ordinary meaning of 'advertising idea' generally encompasses 'an idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage.'" *American Simmental Assn. v. Coregis Ins. Co.*, 282 F. 3d 582, 587 (8th Cir. 2002) (cit. omitted). Here, Pixior alleges that its stolen trade secrets concerned its "knowhow and customers" in the warehousing and distribution business. Pixior's knowhow did not proclaim desirable qualities so as to increase sales, and thus did not amount to an "advertising idea." *American Simmental*. Nor does the term "advertising idea" encompass mere information about a claimant's

customers. *We Do Graphics, Inc. v. Mercury Cas. Co.*, 124 Cal. App. 4th 131, 138 (2004) ("The trade secrets allegedly taken were specific customer information, not advertising ideas"). Thus, the underlying counterclaim does not seek damages for the use of another's "advertising idea" in the first instance.[3] Nor does it allege that those secrets were used in an "advertisement," thus failing to satisfy the requirement that injury emanate "within [an insured's] advertisement itself and require[] no further conduct." *Cahill v. Liberty Mut. Ins. Co.*, 80 F. 3d 336, 339 (9th Cir. 1996).

Another Coverage B offense is "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services …." (Uncontroverted fact no. 19) In this regard Pixior alleges that "[c]ommencing on or about January 2016 and continuing thereafter" Caden "falsely published, communicated and caused to be published to the public and local police department that" Pixior and Amallal "have stolen their monies, overcharge customers, and lose goods warehoused" by Pixior. (Uncontroverted fact no. 14.) These allegations implicate the slander offense in the 2015-2016 policy. *Harbor Ins. Co. v. Central Nat'l Ins. Co.*, 165 Cal. App. 3d 1029, 1036 (1985) (trigger for Coverage B offenses is when the "gist of the tort is committed"); *Zurich Ins. Co. v. Peterson*, 188 Cal. App. 3d 438, 447 (1986). [4]

---

[3] Coverage for the alleged theft of Pixior's trade secrets, even if they amounted to advertising ideas in the first place, would also be barred by the exclusion for personal and advertising injury "arising out of any access to or disclosure of any person's or organization's confidential or personal information, including … trade secrets, processing methods, customer lists … or any other type of nonpublic information."

[4] In any event, the exclusion for slander arising from "material whose first publication took place before the beginning of the policy period" would preclude any duty to defend or indemnify under the 2016-17. *Ringler Assoc., Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1185 (2000).

**C. The breach-of-contract exclusion precludes any duty to defend.**

The 2015-16 policy excludes coverage for "'[p]ersonal and advertising injury' arising out of a breach of contract …." (Uncontroverted fact no. 21) In this regard, "California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions," such that the phrases "broadly link[] a factual situation with the event creating liability, and connote[] only a minimal causal connection or incidental relationship." *Acceptance Ins. Co. v. Syufy Enterprises, Inc.*, 69 Cal. App. 4th 321, 328 (1999) (citations omitted). California federal and state courts have followed this construction in concluding that insurers are not required to defend insureds in litigation alleging tort claims that bear incidental relationships to concurrent breach-of-contract claims.

For example, the district court in *Trenches, Inc. v. Hanover Ins. Co.*, 2012 U.S. Dist. Lexis 190868, *17 (C.D. Cal. 2012), *aff'd* 575 Fed. Appx. 741 (9th Cir. 2014), concluded that a standard breach-of-contract exclusion, such as the exclusion in the Penn-Star policy here, was unambiguous and applied in relevant part to personal and advertising injury that "bears a 'minimal causal connection or incidental relationship' to the breach of contract." In so ruling, *Trenches* rejected the narrow construction of the breach-of-contract exclusion endorsed by *Tower Ins. Co . of N.Y. v. Capurro Enter., Inc.*, 2012 U.S. Dist. Lexis 46443 (N.D. Cal. 2012), "because the phrase 'arising out of' is not ambiguous." 2012 U.S.Dist.Lexis 190868 at *17. The *Trenches* court found that a claim against an insured franchisee for infringement of a franchisor's intellectual property was subject to the breach-of-contract exclusion because the "infringement claim arises out of the same factual situation as" the claims for breach of franchise and settlement agreements "even though the former [infringement claim] has an independent legal basis." 2012 U.S. Dist. Lexis at *19. Accordingly no duty to defend arose because "the Breach of Contract Exclusion unambiguously applies …." *Id*. at *20.

On appeal, the Ninth Circuit affirmed, explaining that:

> The policy's breach of contract exclusion precluded coverage of any potentially covered claim "arising out of" Trenches's alleged breach of the Franchise Agreements and Settlement Agreement. In California, the phrase "arising out of" is construed broadly, even if in an exclusion, to mean "originating from," "flowing from," "incident to," or "having a connection with." [Citations.] Here, the underlying complaint filed against Trenches specifically alleged that Trenches violated its contractual obligations by continuing to use the third party's mark and trade dress. Thus, the claims against Trenches fall within the exclusion for claims "arising out of" a breach of contract.

575 Fed. Appx. at 741-742.

Similarly, in *Axis Ins. Co. v. Inter/Media Time Buying Corp.*, 2015 U.S. Dist. Lexis 77026, *22 (C.D. Cal. 2015), the court concluded that an exclusion for claims "arising out of any actual or alleged[] breach of contract" in an error-and-omissions endorsement to a liability policy barred any duty to defend claims for fraud and other torts arising from an insured's alleged breach of duties under a contract for advertising services. Applying the recognized construction of the term "arising out of," the *Axis* court found that "all of the allegations in the underlying action that are covered under the … E&O Endorsement 'flow from' [the insureds'] contractual obligations" and were thus "based squarely on allegations that [the insured] misrepresented that it was meeting two of its contractual obligations …." *Id*. at *18, *22.

The district court in *Axis* relied in turn on *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 573 (2006), in which insured directors and officers of a nonprofit organization sought coverage for underlying claims alleging negligence and breach of fiduciary duty in connection with the organization's default of "repayment obligations on a series of municipal bonds." The policy there defined

the term "loss" as excluding "'[d]amages "arising out of" breach of any contract, whether oral, written or implied,'" with the phrase "arising out of" defined as "'based upon, arising out of, or in connection with.'" *Id*. at 826. The *Medill* court equated the policy definition of "arising out of" to the standard construction from *Syufy* and held the insurer had no duty to defend because "the directors' and officers' potential liability would not exist without the contracts … entered into in connection with the issuance and financing of the bonds." *Id*. at 830.

Likewise, in *Southgate Rec. & Park Dist. v. California Assoc. for Park and Rec. Ins.*, 106 Cal. App. 4th 293, 297 (2003), unpaid subcontractors hired for the construction of a golf course sued the owner after the general contractor went bankrupt and its sureties defaulted. The subcontractors alleged that the owner had breached its obligations under the subcontracts it had assumed from the general contractor, had failed to insure the adequacy of the surety bonds, and had improperly administered construction funds. *Id*. at 300. In disputes with its insurer (a joint-powers authority under Cal. Govt. Code § 6500 et seq.), the owner asserted that an exclusion for liability "arising out of" construction contracts did not apply to the subcontractors' tort claims, which included conversion, breach of trust, and violation of a stop notice. *Id*. at 301. After noting that "the '"arising out of" connective … broadly links' the exclusionary operative events with the exclusion," the *Southgate* court held that the exclusion applied to the tort claims because the "alleged negligence of statutory duties arise out of or are related to the ... construction contract." *Id*. at 301-302 (cit. omitted).

Notwithstanding the recognized construction of "arising out of," two recent decisions have taken the unusual tack of declining to apply a breach-of-contract exclusion in the context of the duty to defend because "the exclusion could have been written more broadly so as to cover all claims for injury arising out of an 'alleged' breach of contract." *KM Strategic Management, LLC et al. v. American Cas. Co. of Reading, PA*, 156 F. Supp. 3d 1154, 1171 (C.D. Cal. 2015); *accord*,

*MedeAnalytics, Inc. v. Federal Ins. Co., Inc.* 2016 U.S. Dist. Lexis 21377, *16 N.D. Cal. 2016). Under these decisions, an insurer relying on an exclusion for loss "arising out of breach of a contract" must "point to 'conclusive evidence'" establishing that any potential liability" for alleged defamation "necessarily arose out of an *actual* breach—not an alleged breach—of … contract." (*KM*, 156 F. Supp. 3d at 1154; *MedeAnalytics*, 2016 U.S. Dist. Lexis 21377 at *20. *KM* and *MedeAnalytics* err for two reasons.

First, *KM* and *MedeAnalytics* ignore that the phrase "arising out of" has an unambiguous, broad application linking the excluded conduct and otherwise-covered conduct, *Trenches*, and violate the principle that words used in a contract must be applied in the same way, whether in an insuring agreement or in an exclusion. *See e.g., Mirpad, LLC v. Cal. Ins. Guarantee Assn*., 132 Cal. App. 4th 1058, 1069 (2009) ("Words used in a certain sense in one part of an instrument are deemed to have been used in the same sense in another" [cits. omitted].); see *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1116 (1999) (words in two parts of the same policy must have "the same meaning in both clauses").

Second, *KM* and *MedeAnalytics* manufacture ambiguity by imposing the word "actual" into the breach-of-contract exclusions, thus violating the principle that the intent of contracting parties "is to be inferred, if possible, from the written provisions of the contract" and "[i]f the contractual language is clear and explicit, it governs." *Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, 538 F. 3d 1090, 1097 (9th Cir. 2008) (rejecting insured's argument that lack of phrase "whether driven by wind or not" indicated insurer's "intent to narrow its exclusion"). Standard policies include a number of discrete exclusions that apply to different sorts of the dignitary and intellectual-property torts otherwise covered by Coverage B—*see, e.g., S.B.B.C.*, 186 Cal. App. 4th at 397 (exclusion for "other intellectual property rights" not specifically covered); *Kim Seng Co. v. Great American Ins. Co.*, 179 Cal. App. 4th 1030 (2009) (exclusion for material first published before

policy period); *Aloha Pacific, Inc. v. California Ins. Guar. Assn.*, 79 Cal. App. 4th 297 (2000) (exclusion for trademark infringement)—and no such decision applying the Coverage B exclusions have ever held that they did not apply to preclude a duty to defend. That the *KM* and *MedeAnalytics* did suggests the courts there fell into the common mistake of finding policy language ambiguous in the abstract. Policy language, however, "must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903, 916 n. 7 (1986). Nor does the fact that a court believes language could be better written make a difference, as "'the fact that language could be more explicit does not render it ambiguous.'" *California Cas. Co. v. Northland Ins. Co.*, 48 Cal. App. 4th 1682, 1694 (1996) (cit. omitted).

In the context of the breach-of-contract exclusion, it is important to bear in mind that the dignitary and intellectual-property torts ("offenses") listed in Coverage B are designed to address the normal risks of liability to the public and to competitors faced by insured businesses, over which they have little more control than they do over the risk of patrons slipping and falling at the store entrance. It would be quite another thing for an insurer to embroil an insurer in the predictable disputes a business has with its contracting parties of the sort here—which often result in derivative tort claims of fraud, disparagement, and so forth. It is to avoid just such risks that the standard form includes a breach-of-contract exclusion like that here.

This is just such a case. A disagreement arose between Caden and Pixior about the terms of the warehousing and distribution agreement and each parties' performance of those terms, which each side argues the other side breached. In the context of this dispute and the asserted breaches, Pixior alleges that Caden publicly disparaged Pixior's business practices. Pixior's slander claim here thus meets the minimal-causal connection standard required by the exclusion for personal and

advertising injury "arising out of" breach of contract.

This then is just the sort of claim properly addressed by the breach-of-contract exclusion. This Court should decline to follow *KM* and *MetaAnalytics* and instead follow the better-reasoned decisions by the Ninth Circuit in *Trenches*, 575 Fed. Appx. 741, the district court's decision in *Axis*, 2015 U.S. Dist. Lexis 77026, and the California appellate decisions in *Medill*, 143 Cal. App. 4th 819, and *Southgate*, 106 Cal. App. 4th 293—all of which found that the breach-of-contract exclusion applies to negate a duty to defend. The Court thus should find that the breach-of-contract exclusion applies here and that Penn-Star has no duty to defend Caden in the underlying litigation as a matter of law.

**2. Because Penn-Star has no duty to defend it can have no duty to indemnify.**

As explained above, Penn-Star has no duty to defend Caden in the underlying action as a matter of law. "Because the duty to defend is broader than the duty to indemnify, summary judgment for the insurer[] on the former necessarily includes the latter." *Anthem Elec., Inc. v. Pacific Empl. Ins. Co.*, 302 F. 3d 1049, 1054 n. 2 (9th Cir. 2002). Penn-Star rather than Caden is entitled to a judicial declaration in its favor as to the duty to indemnify.

**3. Penn-Stars has no duty to pay for Caden's personal counsel.**

Caden alleges that Penn-Star was required to pay for "independent" *Cumis* counsel[5] under Cal. Civ. Code § 2860(b), which states that "when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist."

[5] The term *Cumis* counsel is derived from the decision in *San Diego Fed. Cred. Union v. Cumis Ins. Society, Inc.*, 164 Cal. App. 3d 358, 364, (1984), the principal holding which led to the enactment of Cal. Civ. Code § 2860.

Caden does not allege that Penn-Star's reservation under the breach-of-contract exclusion creates a conflict of interest. Instead, Caden alleges that there is a conflict of interest because "punitive damages can be … assessed against [Caden] if [Pixior] shows that [Caden] committed slander intentionally and with malice, oppression or fraud," and "California insurance law declares as void and against public policy any agreement by a liability insurer to indemnify insureds for third-party losses which are found to have been intentionally caused by the insureds." (Req. jud. not., exh. 4 [Caden's countercl.], p. 9, ¶¶27, 28.) Caden thus appears to reason that an insurer's disclaimer of coverage for punitive damages automatically constitutes a reservation of rights under Cal. Ins. Code § 533, which as a matter of California public policy establishes that "[a]n insurer is not liable for a loss caused by the wilful act of the insured …."

Caden's logic fails. Under Cal. Civ. Code § 2860(b) "[n]o conflict of interest shall be deemed to exist as to allegations of punitive damages," a proscription which would be eviscerated if a disclaimer of coverage for punitive damages were deemed equivalent to a reservation to disclaim coverage for willful acts. Nor do the uncontroverted facts disclose any fact issue affecting coverage the outcome of which would be within the control of counsel retained by Penn-Star, since application of the breach-of-contract exclusion is a question of law only. After all, under § 2860(b) it is likewise true that "a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage." As a matter of law Penn-Star is not required to provide *Cumis* counsel to Caden.

**4. Caden cannot prevail on its "bad faith" claim.**

Caden alleges that Penn-Star is liable for breach of the implied covenant of good faith and fair dealing because of "actual and threatened withholding of benefits … without proper cause …." (Req. jud. not., exh. 4 [Caden's countercl.],

p. 11, ¶36.) But "'[a]s a general rule . . . there can be no breach of the implied covenant of good faith and fair dealing if no benefits are due under the policy[.]'" *Trishan Air, Inc. v. Federal Ins. Co.*, 635 F. 3d 422, 434 (9th Cir. 2011). Because Caden cannot prove that it was entitled to benefits under the Penn-Star policy it likewise cannot recover on its "bad faith" claims as a matter of law.

## CONCLUSION

Pixior's counterclaim in the underlying *JKL* action does not potentially seek damages covered by the Penn-Star policies, and Penn-Star thus has no duty to defend Caden as a matter law. Because Penn-Star has no duty to defend it can have no duty to indemnify either. Caden's tag-along theory based on alleged failure to provide "independent" (*Cumis*) counsel is likewise without basis because Penn-Star's defense of Caden under a reservation of rights does not give rise to a conflict of interest. Penn-Star cannot be found to have breached the implied covenant of good faith and fair dealing because no policy benefits are owed. The Court thus can and should grant this motion and enter judgment in favor of Penn-Star on its complaint and against Caden on its counterclaim.

Respectfully submitted,

NIELSEN, HALEY & ABBOTT LLP

November 7, 2017 By: /s/ Thomas H. Nienow

Thomas H. Nienow
Attorneys for Plaintiff and Counterdefendant
PENN-STAR INSURANCE COMPANY