JAMES C. NIELSEN (111889)
*jnielsen@nielsenhaley.com*
THOMAS H. NIENOW (136454)
*tnienow@nielsenhaley.com*
NIELSEN, HALEY & ABBOTT LLP
100 Smith Ranch Road, Suite 350
San Rafael, California 94903
Telephone: (415) 693-0900
Facsimile: (415) 693-9674

Attorneys for Plaintiff and Counterdefendant
PENN-STAR INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PENN-STAR INSURANCE COMPANY, *a Pennsylvania corporation,*<br><br>Plaintiff,<br><br>v.<br><br>THE CADEN COMPANIES, INC., dba BELLY BANDIT, *a California Corporation*, LORI CADEN, *an individual*, JODI CADEN, *an individual*, and CARMEN PULIDO, *an individual*.<br><br>Defendants. | No. 2:17-cv-02369-AB-PLAx<br><br>[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW. |
| AND COUNTERCLAIM | Date: December 15, 2017<br>Time: 10:00 a.m.<br>Courtroom 7B, First Street Courthouse<br>HONORABLE ANDRÉ BIROTTE, JR. |

**UNCONTROVERTED FACTS**

After consideration of the papers in support of and in opposition to plaintiff Penn-Star Insurance Company's motion for summary judgment and the oral argument of counsel, the Court determines that the following uncontroverted facts have been established:

Fact no. 1:

The Caden Companies, Inc., has sued Pixior LLC in underlying litigation styled, *JKL IP Company, LLC v. Creative Forces Group, Inc.*, C.D. Cal., No. 2:16-cv-09065-CBM-SS.

(Req. jud. not., exh. 1 [underlying first am. compl.].)

Fact no. 2:

As alleged in the *JKL* action, Caden, using the name "Belly Bandit," is "in the business of designing, marketing, selling, and distributing women's clothing, namely maternity wear and shapewear designed for use before, during, and after pregnancy."

(Req. jud. not., exh. 1 [underlying first am. compl.], p. 003, ¶5).)

Fact no. 3:

Caden alleges that it contracted with Pixior to "warehouse, pick, package, and ship" Caden's "products and goods to various big box stores, retailers of maternity items and online retailers." A "necessary and material part of the" contracts "included confidentiality provisions" governing the parties' respective confidential, proprietary information.

(Req. jud. not., exh. 1 [underlying first am. compl.], p. 008, ¶31, p. 009, ¶38, pp. 064-079 [exh. C to underlying first am. compl.], and pp. 081-090 [exh. E to underlying first am. compl.].)

<u>Fact no. 4</u>:

In December 2015, Pixior "suddenly" presented a new agreement to Caden requiring it to pay "significantly higher fees, changed payment terms, timing, and conditions and charged [Caden] for storage and inventory counts that it had never been charged for previously."

(Req. jud. not., exh. 1 [underlying first am. compl.], p. 010, ¶39.)

<u>Fact no. 5</u>:

"Pixior's unilateral attempt at changing the parties' agreement constituted a breach of the existing contract …."

(Req. jud. not. exh. 1 [underlying first am. compl.], p. 045, ¶191.)

<u>Fact no. 6</u>:

Caden notified Pixior of its intent to terminate, and Pixior allegedly then placed a fraudulent warehouseman's lien on Caden's goods in storage and used its boxes and shipping materials to ship competitors' products.

(Req. jud. not., exh. 1 [underlying first am. compl.], p. 045, ¶192, p. 046, ¶¶194 and 195, and pp. 091-096 [exh. F to underlying first am. compl.].)

<u>Fact no. 7</u>:

Caden alleges that it paid both the fees and the "falsified additional charges" because its "business was at a standstill as long as the products were being held hostage …."

(Req. jud. not., exh. 1 [underlying first am. compl.], p. 046, ¶196.)

<u>Fact no. 8</u>:

The first amended complaint also alleges that Pixior allowed a company called "Tummy Aid"—a Caden competitor—access to Caden's confidential trade

secrets to put Caden out of business.

(Req. jud. not., exh. 1 [underlying first am. compl.], pp. 012-013, ¶¶49-51.)

Fact no. 9:

Based on these allegations, Caden states claims against Pixior and its principal Yassine Amallal for breach of contract as well as indirect patent infringement, misappropriation of trade secrets, fraud, intentional misrepresentation, fraudulent warehouseman's lien, interference with business relations, and violation of Cal. Bus. & Prof. Code § 17200.

(Req. jud. not., exh. 1 [underlying first. am. compl.], pp. 037-038, 041-043, 044-055, 057-059.)

Fact no. 10:

Pixior counterclaimed against Caden and its putative employee Carmen Pulido.

(Req. jud. not., exh. 2 [underlying countercl.].)

Fact No. 11:

Pixior refers to the 2012 "Warehousing and Distribution Agreement" with Caden as the "Pixior Agreement," which stated that Pixior owned its confidential trade secrets and that Caden would not solicit any of Pixior's employees during and two years after termination of the Pixior Agreement.

(Req. jud not., exh. 2 [underlying countercl.], p. 006, ¶¶16-18, and pp. 014-024 [exh. 1 to underlying countercl.].)

Fact No. 12:

Regarding its trade secrets, Pixior alleges that its "knowhow in the warehousing and fulfillment business was, and is, unique in conception" and that,

as a result, Pixior's service is "widely known and accepted among businesses in the apparel industry and demand has developed therefore in the marketplace." The information relating to Pixior's "knowhow and customers was confidential" and constituted "trade secrets not accessible to others for their commercial benefit."

(Req. jud. not., exh. 2 [underlying countercl.], p. 009, ¶¶33, 35.)

Fact No. 13:

Caden allegedly breached the Pixior Agreement by "stealing and using [Pixior's] trade secrets" and by "soliciting the employment of Counter-Defendant Pulido and two other Pixior workers."

(Req. jud. not., exh. 2 [underlying countercl.], p. 006, ¶18.)

Fact No. 14:

The counterclaim also alleges that "[c]ommencing on or about January 2016 and continuing thereafter," Caden "willfully, without justification and without privilege falsely published, communicated and caused to be published to the public and local police department that" Pixior and Amallal "have stolen their monies, overcharge customers, and lose goods warehoused" by Pixior. These alleged statements "created the false appearance" that Pixior "is criminal and incompetent in its business."

(Req. jud. not., exh. 2 [underlying countercl.], pp. 010-011, ¶¶41 and 42.)

Fact No. 15:

Based on these allegations Pixior states counterclaims against Caden for breach of contract, a judicial declaration that only the Pixior Agreement is valid and enforceable, and slander. Pixior also states counterclaims for violation of Cal. Bus. & Prof. Code § 17200 et seq., and violation of the Uniform Trade Secrets Act, Cal. Civ. Code § 3426.3, against Caden and Pulido.

(Req. jud. not, exh. 2 [underlying countercl.], pp. 005-011.)

Fact No. 16:

Penn-Star issued to Caden Companies as named insured Commercial Lines insurance policy number CPV0006525 effective July 15, 2015, to July 15, 2016. Penn-Star renewed the policy under number CPV0011182 for the policy period July 15, 2016, to July 15, 2017.

(Mawby decl., exhs. 5 and 6.)

Fact No. 17:

Where the named insured is a corporation as here, the term "insured" includes the named insureds' executive officers, directors, and shareholders, in their capacity as such, as well as the named insured's employees.

(Mawby decl., exh. 5, p. 011-012, exh. 6, pp. 011-012.)

Fact No. 18:

The Penn-Star policies sets forth the following relevant insuring language:

**SECTION I—COVERAGES**

* * *

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured any against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit"

> seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. * * *

(Mawby decl., exh. 5, p. 008, exh. 6, p. 008.)

Fact no. 19:

The term "personal and advertising injury" means in relevant part the offenses of "[t]he use of another's advertising idea in your 'advertisement'" or "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services …."

(Mawby decl., exh. 5, p. 016, exh. 6, p. 016.)

Fact no. 20:

The policies define "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your good, products or services for the purpose of attracting customers or supporters" and includes "material placed on the internet or on similar electronic means of communication …."

(Mawby decl., exh. 5, p. 014, exh. 6, p. 014.)

Fact no. 21:

The policies also set forth the following relevant exclusions:

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

* * *

**2. Exclusions**

This insurance does not apply to:

* * *

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

* * *

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

* * *

(Mawby decl., exh. 5, pp. 008, 009, exh. 6, pp. 008, 009.)

Fact no. 22:

Endorsements to the policies also set forth the following relevant exclusion:

*** * ***

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

* * *

B. The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability**:

**2. Exclusions**

This insurance does not apply to:

> **Access Or Disclosure Of Confidential Or Personal Information**
>
> "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.
>
> This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

(Mawby decl., exh. 5, p. 019, exh. 6, p. 019.)

<u>Fact no. 23</u>:

Penn-Star agreed to defend Caden in connection with the underlying counterclaim under a reservation of rights while disclaiming any duty to defend Pulido.

(Mawby decl., p. 2, ¶4.)

<u>Fact no. 24</u>:

Penn-Star then filed this action seeking judicial declarations that it has no duty to defend or indemnify Caden or Pulido against the underlying action.

(Req. jud. not., exh. 3 [Penn-Star's compl.].)

<u>Fact No. 25</u>:

The Clerk has entered the default of Pulido based on her failure to file a

responsive pleading.

(Doc. 19.)

<u>Fact No. 26</u>:

Caden has filed a counterclaim against Penn-Star alleging claims for breach of the duty to provide "independent" (*Cumis*) counsel, a judicial declaration that Penn-Star is required to indemnify Caden in the underlying action, and breach of the implied covenant of good faith and fair dealing.

(Req. jud. not. exh. 4 [Caden's countercl.].)

## CONCLUSIONS OF LAW

Based on the foregoing uncontroverted facts, the Court now makes the following conclusions of law:

1. The Court has jurisdiction of this action under 28 U.S.C. § 1332.

2. Penn-Star has no duty to defend or indemnify The Caden Companies, Inc., Lori Caden, Jodi Caden, or Carmen Pulido in connection with the underlying *JKL* action.

3. Penn-Star has no duty under Cal. Civ. Code § 2860 to provide "independent" (*Cumis*) counsel to The Caden Companies, Inc., Lori Caden, or Jodi Caden, in connection with the *JKL* action.

4. Penn-Star did not breach the implied covenant of good faith and fair dealing.

5. Penn-Star is entitled to judgment in its favor on its complaint and on the counterclaim of Caden in this action.

Dated: __________, 2017 By: ______________________________

Honorable André Birotte, Jr.
UNITED STATES DISTRICT JUDGE

SUBMITTED BY: NIELSEN, HALEY & ABBOTT LLP

Dated: November 6, 2017

By: /s/ Thomas H. Nienow

Thomas H. Nienow
Attorneys for Plaintiff and Counterdefendant
PENN-STAR INSURANCE COMPANY