JAMES C. NIELSEN (111889)
*jnielsen@nielsenhaley.com*
THOMAS H. NIENOW (136454)
*tnienow@nielsenhaley.com*
NIELSEN, HALEY & ABBOTT LLP
100 Smith Ranch Road, Suite 350
San Rafael, California 94903
Telephone: (415) 693-0900
Facsimile: (415) 693-9674

Attorneys for Plaintiff and Counterdefendant
PENN-STAR INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

PENN-STAR INSURANCE COMPANY, *a Pennsylvania corporation,*

Plaintiff,

v.

THE CADEN COMPANIES, INC., dba BELLY BANDIT, *a California Corporation*, LORI CADEN, *an individual*, JODI CADEN, *an individual*, and CARMEN PULIDO, *an individual*.

Defendants.

AND CROSS ACTION

No. 2:17-cv-02369-AB-PLAx

REPLY IN SUPPORT OF PENN-STAR'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO CADEN'S CROSS-MOTION.

Date: December 15, 2017
Time: 10:00 a.m.
Courtroom 7B, First Street Courthouse
HONORABLE ANDRÉ BIROTTE, JR.

### 1. The independent-concurrent-causation doctrine does not apply here and Caden's alleged slander of Pixior is excluded because it arose out of Caden's breach of contract.

In its moving papers Penn-Star shows that the slander counterclaim in the underlying *JKL* action does not potentially seek covered damages because Caden's alleged defamatory utterances about Pixior and Amallal arose out of disputes over the terms of the contract for the warehousing and distribution of Caden's products, which each argues the other breached. In this regard, the Penn-Star policy excludes coverage for slander "arising out of a breach of contract," and federal and state decisions in California have consistently held that the phrase "arising out of" requires only an incidental or "but for" causal connection, which is met here as a matter of law. (Mot. 10:1-12:22, discussing *Axis Ins. Co. v. Inter/Media Time Buying Corp.*, 2015 U.S. Dist. Lexis 77026, *22 (C.D. Cal. 2015); *Trenches, Inc. v. Hanover Ins. Co.*, 2012 U.S. Dist. Lexis 190868, *17 (C.D. Cal. 2012), *aff'd* 575 Fed. Appx. 741 (9th Cir. 2014); *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 573 (2006); *Southgate Rec. & Park Dist. v. California Assoc. for Park and Rec. Ins.*, 106 Cal. App. 4th 293, 297 (2003); *Acceptance Ins. Co. v. Syufy Enterprises, Inc.*, 69 Cal. App. 4th 321, 328 (1999).) As also explained in Penn-Star's moving papers, this result accords with the purpose of coverage for dignitary and intellectual-property torts, i.e., to extend coverage only to risks of liability over which insureds have no more control than they would over the risk of slip-and-falls at a store entrance. The breach-of-contract exclusion thus excises coverage for slander in the context of contract disputes that predictably result in side claims like disparagement.

Caden does not challenge the broad impact of the phrase "arising out of" but instead argues that it does not apply here because Caden's alleged slander of Pixior involved both an excluded cause—"slandering a party to a contract to create an excuse from having to perform the contract" (Opp. 20:24-25)—and a covered cause—"slander as part of unfair competition" (Opp. 20: 22-23)—which implicates

the doctrine of independent concurrent causation under which an exclusion does not preclude coverage where "an insured risk constitutes simply *a* concurrent proximate cause of the injuries." (Opp. at 18:10-12 quoting *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. 4th 94, 105 (1973) (orig. ital.); *see generally* Opp. 20:26-21:1.) Caden also argues that Penn-Star's breach-of-contract exclusion is "ambiguous as to Penn-Star's intent concerning the coverage afforded when economic loss arises as a result of an insured slandering another party to justify a breach of contract and also as a result of the insured slandering a competitor to further an unfair competition scheme." (Opp. 21:20-24.)

Caden's assertions, however, fail to mention that the doctrine applies only to concurrent causes that are *independent.* It thus applies "only in liability cases in which true concurrent causes, each originating from an *independent act of negligence*, simultaneously join together to produce injury." *Garvey v. State Farm Fire & Cas. Co.,* 48 Cal. 3d 395, 399 (1989) (ital. added). Thus, "in order for *Partridge* [and its doctrine] to apply, there must be two negligent acts or omissions of the insured, one of which, *independently of the excluded cause*, renders the insured liable for the resulting injuries." *Prince v. United Nat'l Ins. Co.*, 142 Cal. App. 4th 233, 239 (2006) (ital. added). Courts in a variety of contexts have rejected insureds' attempts to avoid exclusionary clauses by pointing to *dependent* antecedent conduct that they characterized as independent. *See, e.g., Prince*, 142 Cal. App. 4th at 244-45 (deaths of two foster children from hyperthermia while sitting in a parked SUV arose from the use of the automobile within the meaning of an auto exclusion because their foster mother's liability for negligent supervision depended upon use of auto); *Century Transit Systems, Inc. v. American Empire Surplus Lines Ins. Co.*, 42 Cal. App. 4th 121, 125 (1996) (alleged negligent hiring of cab driver who beat two men filming gay-rights demonstration did not avoid assault-and-battery exclusion because the alleged separate negligent acts were all "*based on* the assault and battery committed by [the taxi driver] on the plaintiffs")

(orig. itals.); *Atlas Assurance Co. v. McCombs Corp.*, 146 Cal. App. 3d 135, 147 (declining to apply concurrent-causation doctrine where insured was sued for theft of property from locker and negligently hiring employee who stole the property because "subsequent cases have demonstrated the crucial factor in *Partridge* was that the two causes of the injury were *separate* and *independent* of one another" (orig. italics).)

In particular, the court in *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 829 (2006), rejected the insureds' attempts there to avoid an exclusion for loss """arising out of" breach of any contract,'" by arguing that failure to make repayments on bonds was caused by acts outside of the exclusion such as "wrongful conduct of officers and directors" and "mismanagement of the bond funds and bond-funded projects." The *Medill* court held that the concurrent-causation doctrine did not apply because "the alleged negligence and breach of fiduciary duties by the directors and officers *did not exist independently of the other risks not covered by the policy*." (Italics added.) Here too Caden's alleged acts of unfair competition, its attempt to avoid the contract, and Caden's alleged slander of Pixior did not exist independently of Caden's alleged breach of the warehousing agreement, and in this regard Pixior specifically alleges that the interrelated acts of "business espionage" breached confidentiality and non-solicitation clauses in the warehousing agreement. (Req. jud. not., exh. 2 [underlying countercl.] at 5:21-6:25, and p. 8, ¶26.) Under *Medill* the doctrine of independent concurrent causation does not apply.

To distract from this conclusion, Caden posits that dual *purposes* for the alleged slander of Pixior—to create an excuse for Caden to avoid performing the underlying contract and, alternatively, to further Caden's alleged unfair competition—are independent *causes* of the slander. Caden's theory is similar to that rejected in *West American Ins. Co. v. California Mut. Ins. Co.*, 195 Cal. App. 3d 314, 324 (1987), where a business insurer attempted to apply the doctrine to

avoid an exclusion in a homeowners policy issued by a second insurer. The exclusion applied to bodily injury "arising out of business pursuits," and the issue was whether it applied where the insurers' mutual insured ran a business out of his house and during an after-hours employee party a fight occurred causing bodily injury. The *West American* court held that the independent-concurrent-causation doctrine was inapplicable to defeat the business-pursuits exclusion "[e]ven if the Friday night gathering was partially *motivated* by social interests" because the doctrine "concerns multiple causes" and a "double social and business nature of the Friday night activities is not the same as *independently* operating *causes* of the injury." *Id*. (italics added). Thus the concurrent-causation doctrine does not apply to Caden's supposed dual "purposes" for allegedly slandering Pixior. *West American*, 195 Cal. App. 3d at 324 ("Nothing in the insurance policy requires that the business pursuit be wholly business related for the exception to apply").

Thus application of the breach-of-contract exclusion here turns solely on the expansive meaning of the unambiguous phrase "arising out of," which as shown in Penn-Star's moving papers requires its application to the slander claim here. (Mot. 10:1-12:22.) Caden proffers no alternative construction of the breach-of-contract exclusion, thereby conceding the point. (Opp. 22:5-23:4.) Because Penn-Star's breach-of-contract exclusion is unambiguous and applies to Pixior's slander claim the Court can and must find that Penn-Star has no duty to defend Caden in the *JKL* action. Because Penn-Star has no duty to defend Caden it can have no duty to indemnify it either. *Anthem Elec., Inc. v. Pacific Empl. Ins. Co.*, 302 F. 3d 1049, 1054 n. 2 (9th Cir. 2002) ("Because the duty to defend is broader than the duty to indemnify, summary judgment for the insurer[] on the former necessarily includes the latter").

**2. Caden's independent-counsel argument is off point and wrong.**

Caden contends that Penn-Star's reservation of rights letter creates a conflict of interest requiring appointment of independent defense counsel under Cal. Civ. Code § 2860. (Opp. at 23-24.) In the first instance, however, Caden does not explain how a right to independent counsel affects whether Penn-Star's duty to defend is eliminated by the breach-of-contract exclusion. The duty-to-defend question at issue here has nothing to do with questions of independent counsel.

Moreover, even if it did, Caden's point is wrong. Caden says that coverage for intentional harm is uninsurable under Cal. Ins. Code § 533, and that Cal. Civ. Code "§ 3294 states that an award for punitive damages will only arise if the plaintiff shows, 'by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice' in committing a tort such as the slander alleged in the Pixior counterclaim." (Opp. 23:9-14.) Caden then says that, "if slander is proven by Pixior, the availability of liability insurance for Pixior's slander claim will hinge on whether the underlying action establishes that Caden slandered Pixior 'negligently' (a covered occurrence) or with 'malice' (an occurrence which California has declared should not and cannot be covered by liability insurance as a matter of public policy)." (Opp. 24:7-8.)

Under § 2860, subd. (b), a duty to provide independent counsel can arise only "when an insurer reserves its rights on a given issue." What Caden misses is that Penn-Star never reserved rights to refuse coverage for damages for supposedly malicious slander, and that Penn-Star's counsel later reiterated that it "has not reserved its right to disclaim under the policy's exclusions for … an act that the insured knows 'would violate the rights of another and would inflict "personal and advertising injury,"' arising out of publication of material 'with knowledge of its falsity,' or any other provision equivalent to an intentional-acts exclusion." (Steinberg decl., exh. B, at p. 2.) In this regard, an insurer can by "statements or acts after [an insured's] wrongful act" waive Cal. Ins. Code § 533. *Evans v. Pacific*

*Indem. Co.*, 49 Cal. App. 3d 537, 541 (1975). Thus Penn-Starr reserved rights only to disclaim coverage for *punitive* damages, and Cal. Civ. Code § 2860, subd. (b), likewise clarifies that "[n]o conflict of interest shall be deemed to exist as to allegations of punitive damages."

Caden's argument about independent counsel is thus both legally irrelevant to Penn-Star's motion and wrong.

**3. Caden's "bad faith" claim is without merit.**

Because Penn-Star owes no duty to defend or indemnify Caden its claim for breach of the implied covenant of good faith and fair dealing likewise fails since "'[a]s a general rule . . . there can be no breach of the implied covenant of good faith and fair dealing if no benefits are due under the policy[.]'" *Trishan Air, Inc. v. Federal Ins. Co.*, 635 F. 3d 422, 434 (9th Cir. 2011).

Caden argues that Penn-Star breached the implied covenant because its original reservation of rights letter stated that it was generally "reserving all rights to deny coverage regardless of whether Penn-Star knew of those rights" at the time of the letter, which rendered "untruthful" the subsequent letter from counsel explaining that Penn-Star had not reserved its rights to disclaim coverage for intentional acts and had the effect of "pursuad[ing] Caden to abandon is request for *Cumis* counsel …." (Opp. 25:23-28.) Caden also faults the second letter as failing to apprise Caden that coverage would "hinge on whether Caden's alleged defamatory statements were published negligently or intentionally." (Opp. 26:1-4.) None of these points survives scrutiny.

Penn-Star's general reservation of rights created only a theoretical conflict of interest that as a matter of law did not give Caden the right to select *Cumis* counsel. *Federal Ins. Co. v. MBL, Inc.*, 219 Cal. App. 4th 29, 47 (2013); *Dynamic Concepts v. Truck Ins. Exch.*, 61 Cal. App. 4th 999, 1007 (1998). Moreover, the letter from Penn-Star's counsel accurately stated that Penn-Star had not reserved its rights

under of the policy's intentional-acts exclusions. (Steinberg decl., exh. A, at pp. 5-6, exh. B at p. 2.) Nor could there have been any duty to explain that coverage could "hinge" on whether Caden's conduct was negligent or intentional because, as explained above, it did not.

Thus Caden never had a right to select *Cumis* counsel from which it could have been dissuaded by counsel's letter, which was truthful. Caden's claim for breach of the covenant of good faith and fair dealing is without merit.

Respectfully submitted,

NIELSEN, HALEY & ABBOTT LLP

/s/ Thomas H. Nienow

December 1, 2017 By: ______________________________

Thomas H. Nienow
Attorneys for Plaintiff and Counterdefendant
PENN-STAR INSURANCE COMPANY