UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PENN-STAR INSURANCE COMPANY,

Plaintiff,

v.

THE CADEN COMPANIES, INC., et al.,

Defendants.

Case No. CV 17-02369 AB (PLAx)

ORDER **GRANTING** PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Plaintiff Penn-Star Insurance Company's ("Plaintiff," or "Penn-Star") Motion for Summary Judgment. ("Motion," Dkt. No. 32.) Defendants The Caden Companies, Inc., et al. ("Defendants") filed an opposition in which they also sought judgment, and Plaintiff filed a reply. The Court heard oral argument on December 15, 2017. For the following reasons, Penn-Star's Motion is **GRANTED**.

## I. UNDISPUTED FACTS

This is an insurance coverage dispute. The following facts are undisputed.[1]

[1] The undisputed facts are set forth in Penn-Star's Statement of Uncontroverted Facts ("SUF," Dkt. No. 32-3). Caden submitted additional facts (Dkt. No. 32-5), but they are not relevant in light of the disposition herein. Penn-Star's unopposed Request for Judicial Notice (Dkt. No. 33) is **GRANTED**.

**A. The Underlying Action**

The Caden Companies, Inc., contracted with Pixior LLC for the latter to warehouse Caden's products and fulfill customer orders. Disputes arose between them and resulted in litigation styled *JKL IP Company, LLC v. Creative Forces Group, Inc.*, C.D. Cal., No. 2:16-cv-09065-CBM-SS ("Underlying Action"). In that action, Caden alleges that it contracted with Pixior to "warehouse, pick, package, and ship" Caden's "products and goods to various big box stores, retailers of maternity items and online retailers." (SUF 3.) A "necessary and material part of the" contracts "included confidentiality provisions" governing the parties' respective confidential, proprietary information. (*Id*.)

In December 2015, Pixior "suddenly" presented a new agreement to Caden requiring it to pay "significantly higher fees, changed payment terms, timing, and conditions and charged [Caden] for storage and inventory counts that it had never been charged for previously." (SUF 4.) "Pixior's unilateral attempt at changing the parties' agreement constituted a breach of the existing contract . . . " (SUF 5.) Caden notified Pixior of its intent to terminate, and Pixior then placed a fraudulent warehouseman's lien on Caden's goods in storage and used its boxes and shipping materials to ship competitors' products. (SUF 6.) Caden alleges that it paid both the fees and the "falsified additional charges" because its "business was at a standstill as long as the products were being held hostage . . . " (SUF 7.) Caden also alleges that Pixior allowed a company called "Tummy Aid"—a Caden competitor—access to Caden's confidential trade secrets to put Caden out of business. (SUF 8.)

Based on these allegations, Caden asserts claims against Pixior and its principal Yassine Amallal for breach of contract, indirect patent infringement, misappropriation of trade secrets, fraud, intentional misrepresentation, fraudulent warehouseman's lien, interference with business relations, and violation of Cal. Bus. & Prof. Code § 17200. (SUF 9.)

Pixior counterclaimed against Caden, its principals Jodi and Lori Caden, and its

employee Carmen Pulido, all of whom are also named defendants in this action. Pixior alleges that a 2012 "Warehousing and Distribution Agreement" with Caden ("Pixior Agreement") stated that Pixior owned its confidential trade secrets and that Caden would not solicit any of Pixior's employees during and two years after termination of the Pixior Agreement. (SUF 11.) Regarding its trade secrets, Pixior alleges that its "knowhow in the warehousing and fulfillment business was, and is, unique in conception" and that, as a result, Pixior's service is "widely known and accepted among businesses in the apparel industry and demand has developed therefore in the marketplace." (SUF 12.) The information relating to Pixior's "knowhow and customers was confidential" and constituted "trade secrets not accessible to others for their commercial benefit." (*Id*.)

Caden allegedly breached the Pixior Agreement by "stealing and using [Pixior's] trade secrets," and by "soliciting the employment of Counter-Defendant Pulido and two other Pixior workers." ( SUF 13.) Pixior's counterclaim also alleges that "[c]ommencing on or about January 2016 and continuing thereafter," Caden "willfully, without justification and without privilege falsely published, communicated and caused to be published to the public and local police department that" Pixior and Amallal "have stolen their monies, overcharge customers, and lose goods warehoused" by Pixior. (SUF 14.) These alleged statements "created the false appearance" that Pixior "is criminal and incompetent in its business." (*Id*.)

Based on these allegations Pixior states counterclaims against Caden for breach of contract, a judicial declaration that only the Pixior Agreement is valid and enforceable, and slander. Pixior also states counterclaims for violation of Cal. Bus. & Prof. Code § 17200 et seq., and violation of the Uniform Trade Secrets Act, Cal. Civ. Code § 3426.3, against Caden and Pulido. (SUF 15.)

**B. The Penn-Star Policy**

Penn-Star issued to Caden as named insured a Commercial Lines insurance policy ("Policy").[2] (SUF 16.) The Policy also includes within its coverage the named insureds' executive officers, directors, and shareholders, in their capacity as such, as well as the named insured's employees. (SUF 17.)

The Policy states the following relevant insuring language:

> **SECTION I—COVERAGES**
>
> * * *
>
> **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured any against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. * * *

(SUF 18.)

The term "personal and advertising injury" means in relevant part the offenses of "[t]he use of another's advertising idea in your 'advertisement'" or "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services . . . ." (SUF 19.)

The Policy defines "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your good, products or services for the purpose of attracting customers or supporters" and includes "material placed on the internet or on similar electronic means of communication . . ." (SUF

[2] There are actually two Policies—an initial policy and a renewed policy—but they are the same in all relevant respects so the Court will refer to them in the singular.

20.)

The Policy also states the following relevant exclusions:

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

* * *

**2. Exclusions**

This insurance does not apply to:

* * *

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

* * *

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

* * *

(SUF 21.)

Endorsements to the Policy also set forth the following relevant exclusion:

B. The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability**:

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic

information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

(SUF 22.)

**C. This Action**

Caden tendered to Penn-Star the defense of the Pixior counter-claim. Penn-Star agreed to defend Caden in connection with the underlying counterclaim under a reservation of rights. (SUF 23.)

Penn-Star then filed this action seeking judicial declarations that it has no duty to defend or indemnify Caden or Pulido2 against the underlying action. (SUF 24.) The Clerk entered the default of Pulido did not file a responsive pleading so the Clerk of court entered her default. (SUF 25.)

Caden has filed a counterclaim against Penn-Star alleging claims for breach of the duty to provide "independent" (*Cumis*) counsel, a judicial declaration that Penn-Star is required to indemnify Caden in the underlying action, and breach of the implied covenant of good faith and fair dealing. (SUF 26.)

## II. LEGAL STANDARD

A motion for summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 24748 (1986). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party will have the burden of proof at trial, the movant can prevail merely

by pointing out that there is an absence of evidence to support the nonmoving party's case. *Id*. The nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. The Court must draw all reasonable inferences in the nonmoving party's favor. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson*, 477 U.S. at 255). Nevertheless, inferences are not drawn out of thin air, and it is the nonmoving party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

## III. DISCUSSION

### A. Penn-Star Has No Duty to Defend Caden Against the Pixior Counterclaim

"Whether an insurer has a duty to defend 'depends in the first instance, on a comparison between the allegations of the complaint and the terms of the policy.'" *S.B.B.C., Inc. v. St. Paul Fire & Marine Ins. Co.*, 186 Cal. App. 4th 383, 388 (2010) (citation omitted). "'If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage. On the other hand, if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance.'" *Id.*

Thus, the "duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 19 (1995). The "duty to defend depends on facts in the

complaint." *Waller*, 11 Cal. 4th at 25. Uncertainty as to the legal interpretation of a policy term will not create a potential for coverage. Thus, "where [the] only potential for liability turns on resolution of [a] legal question, there is no duty to defend." *Id.* at 25-26.

"In an insurance coverage action, the insured has the burden to prove that the claim falls within the basic scope of coverage." *Pan Pac. Retail Prop., Inc. v. Gulf Ins. Co.*, 471 F. 3d 961, 970 (9th Cir. 2006.) (cit. omitted); see *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998).

Here, Penn-Star argues, and Caden does not dispute, that the only Pixior counterclaim that can possibly trigger coverage is the slander claim. The Policy's Coverage B establishes coverage for "sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' . . ." Such an injury is defined to include "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services…." Pixior alleges that "[c]ommencing on or about January 2016 and continuing thereafter" Caden "falsely published, communicated and caused to be published to the public and local police department that" Pixior and Amallal "have stolen their monies, overcharge customers, and lose goods warehoused" by Pixior. These allegations implicate the Policy's coverage for slander.

The analysis does not end there, however. Penn-Star argues that an exclusion applies. In particular, the Policy excludes coverage for "'[p]ersonal and advertising injury' arising out of a breach of contract . . . .". "California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions," such that the phrases "broadly link[] a factual situation with the event creating liability, and connote[] only a minimal causal connection or incidental relationship." *Acceptance Ins. Co. v. Syufy Enterprises, Inc.*, 69 Cal. App. 4th 321, 328 (1999) (citations omitted). Thus, in California, the phrase "arising out of" is construed broadly to mean "originating from," "flowing from," "incident to," or

"having a connection with," even if used in an exclusion. *Davis v. Farmers Ins. Group*, 134 Cal.App.4th 100, 106-07, (2005) (quoting *Fibreboard Corp. v. Hartford Accident & Indem. Co.*, 16 Cal.App.4th 492, 503-04 (1993)). In *Southgate Rec. & Park Dist. v. California Assoc. for Park and Rec. Ins.*, 106 Cal. App. 4th 293 (2003), for example, the court considered whether an exclusion for liability "arising out of" construction contracts applied to a subcontractors' tort claims for conversion, breach of trust, and violation of a stop notice. *Southgate*, 106 Cal. App. 4th at 301. Noting that "it is not the underlying claims' legal theories that control coverage and exclusions—it is their facts," the Court held that because "the subcontractors' claims . . . for conversion, breach of trust, and violation of stop notice are based on [the insured's] alleged negligent or improper administration of the [] construction contract funds . . . [t]hese claims . . . arise out of or are related to a construction contract," and are therefore excluded from coverage. *Id.* at 301-302.

Likewise here, the underlying dispute between Caden and Pixior concerns the terms of their warehousing and distribution agreement, and each sides' alleged performance and breach. Pixior's slander claim alleges that Caden "willfully, without justification and without privilege falsely published, communicated and caused to be published to the public and local police department that" Pixior and Amallal "have stolen their monies, overcharge customers, and lose goods warehoused" by Pixior—allegations that all arise out of Caden's alleged breach of contract. Therefore, Pixior's slander claim "aris[es] out of a breach of contract" and is excluded from coverage.[3]

[3] At oral argument, Caden's counsel argued that the duty to defend was also triggered by Pixior's unfair competition claim. This argument was not squarely presented in the briefing, so it is was not timely raised. It also lacks merit because the unfair competition claim, like the slander claim, "arises out of a breach of contract" and is therefore subject to the exclusion. In the unfair competition claim, Pixior alleges that Caden "breached the . . . Agreement by . . . stealing and using Pixior's trade secrets . . . and soliciting" Pixior's workers. Pixior Counterclaim (Penn-Star RJN Ex. 2) ¶¶ 17-18, 26. Pxior also alleges that Caden did this "to circumvent the . . . Agreement." *Id.* ¶ 27. Pixior's unfair competition claim clearly arises out of the Agreement. Caden's contrary argument is thus rejected as untimely and on its merits.

**B. The Concurrent Causes Doctrine Does Not Apply.**

Caden does not challenge the foregoing analysis. Instead, Caden invokes the concurrent causation doctrine. Under this doctrine "when two such risks [an insured risk and an excluded risk] constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy." *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94, 102 (1973). In *Partridge*, the insured (Partridge) and a passenger were hunting jackrabbits by shooting out of the windows of Partridge's vehicle while Partridge was driving. Previously, Partridge negligently modified his gun so that would have "hair trigger action." *Id.* at 98-99. Partridge drove off the road to follow a rabbit and hit a bump, causing his gun to discharge into another passenger and paralyzing her. The paralyzed passenger sued Partridge, and the question on appeal was whether the personal liability provision of Partridge's homeowner's insurance policy covered the incident despite the policy's exclusion for injury arising from the use of a motor vehicle. *Id.* at 98. The Court held that the "use" of Partridge's car was not the sole cause of the passenger's injuries, but, along with the negligently-modified gun, was one of two joint causes of the accident. Id. at 102. The Court held that "although the accident occurred in a vehicle, the insured's negligent modification of the gun suffices, in itself, to render him fully liable," and in turn, "inasmuch as the liability of the insured arises from his non-auto-related conduct, and exists independently of any 'use' of his car, [] the homeowner's policy covers that liability." *Id.* at 103.

This concurrent causes rule does not apply to the facts of this case. As Penn-Star explains, this doctrine is more accurately referred to as the *independent* concurrent causes doctrine because it applies only in "cases in which true concurrent causes, each originating from an independent act of negligence, simultaneously join together to produce injury." *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 399 (1989) (noting "we must put *Partridge* in is proper perspective…"); *see also Daggs v. Foremost Ins. Co.*, 148 Cal.App.3d 726, 73 (1983) ("in order for *Partridge*

to apply there must be two negligent acts or omissions of the insured, one of which, independently of the excluded cause, renders the insured liable for the resulting injuries”).

*Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819 (2006) in instructive because there, as here, the insureds attempted to avoid an exclusion for loss “ ‘arising out of’ breach of any contract.” The plaintiffs in the underlying litigation sued the insured’s directors for tort claims—negligence and breach of fiduciary duty—for failing to repay certain bonds; they asserted no breach of contract claim. Nevertheless, the court found that these tort claims arose out of the insured’s contractual obligation to pay the bonds and was thus subject to the contractual exclusion. *Id.* at 829. The court also held that the concurrent causes doctrine did not apply because the directors’ tortious misconduct was directly connected to the excluded risks arising out of the bond contract, and were not independent of those risks. *Id.* at 835. The independent concurrent causes doctrine therefore did not apply to the tort claims and they remained subject to the contractual exclusion.

The same result obtains here. Caden’s alleged acts of unfair competition and slander against Pixior were not independent of the warehousing agreement. To the contrary, what Pixior alleges to be slander is what Caden characterizes as Pixior’s breach of their agreement. Furthermore, Pixior expressly alleges that Caden’s trade secret misappropriation breached the agreement. Thus, Caden’s alleged tortious conduct is substantially the same conduct comprising breach of contract. The tortious conduct is not independent of the breach conduct, so the independent concurrent causes doctrine does not apply.

**C. The Remaining Claims Also Fail.**

Because Penn-Star has no duty to defend Caden, it has no duty to indemnify Caden. *See Anthem Elecs., Inc. v. Pac. Employers Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002) (“Because the duty to defend is broader than the duty to indemnify, summary judgment for the insurers on the former necessarily includes the latter.”).

And, because Penn-Star owes Caden no defense, Penn-Star need not pay for independent counsel. Finally, because Penn-Star has no duty to defend or indemnify Caden, no benefits are due, so Caden's breach of the covenant of good faith and fair dealing also fails. *See Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 434 (9th Cir. 2011) (" 'As a general rule . . . there can be no breach of the implied covenant of good faith and fair dealing if no benefits are due under the policy.' ") (citation omitted).

## IV. CONCLUSION

For the foregoing reasons Penn-Star's Motion for Summary Judgment is **GRANTED** in its entirety. The Court will enter Penn-Star's Proposed Judgment.

**IT IS SO ORDERED.**

Dated: December 28, 2017

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE